IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00236-KAS

EDNA WREN,

      Plaintiff,

v.

DOUGLAS A. COLLINS, Secretary of the U.S. Department of Veterans Affairs,

      Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Defendant's **Motion to Dismiss Claims Three Through Five** [#23] (the "Motion").[1] Plaintiff filed a Response [#34] in opposition to the Motion [#23], and Defendant filed a Reply [#38]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Motion [#23] is **GRANTED in part** and **DENIED in part**.[2]

---

[1] The Motion [#23] was filed by Defendant Denis R. McDonough, but, pursuant to Fed. R. Civ. P. 25(d), Defendant Douglas A. Collins has been automatically substituted in his place.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 72.2(d) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#15, #21, #22].

## I. Background

**A.    Factual Background**

**1.    Plaintiff Accepts a Position at Veterans Affairs**

According to the Complaint [#1],[3] the United States Department of Veterans Affairs (the "VA") hired Plaintiff on March 17, 2017. *Compl.* [#1] at 3.[4] The VA hired Plaintiff as an optometry technician under Schedule A.[5] *See id.* at 4. Plaintiff has a "diagnosed Brain Injury with PTSD [post-traumatic stress disorder] that causes cognitive deficits in processing, comprehension, memory storage, aphasia and fatigue." *Id.* at 3. In her job, Plaintiff conducted eye examinations of veterans at the Colorado Springs VA Optometry Clinic. *See id.* at 4.

**2.    Plaintiff Faces Problems at Her New Job**

In August 2017, Plaintiff complained to her supervisor, Dr. Christopher Allen ("Dr. Allen"), about treatment by coworker Amanda Williams ("Ms. Williams"). *Id.* at 4-5. Over the next six months, Plaintiff met with Dr. Allen three more times to discuss her concerns

---

[3] For the purposes of resolving the Motion [#23], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in the Complaint [#1]. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court views these allegations in a light most favorable to Plaintiff, the nonmoving party. *Shero*, 510 F.3d at 1200. Although Plaintiff obtained counsel prior to filing the Response [#34], she was proceeding as a pro se litigant when she filed the Complaint [#1]. The Court must liberally construe a pro se litigant's filings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In doing so, the Court will not be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[4] The Court refers to the CM/ECF electronic docketing system's page numbering rather than to any internal page numbers on Plaintiff's Complaint [#1] and other Court filings.

[5] Plaintiff does not explain what Schedule A entails, but Defendant clarifies that "Schedule A . . . allows a disabled individual to be selected for an open position outside of the competitive process." *Motion* [#23] at 2; *see Compl.* [#1] at 3 ("I was hired . . . on a Schedule A hiring for Disabled person.").

but received no assistance. *See id.* at 5. In March 2018, Plaintiff met with her union representative to complain that her personal belongings were disappearing at work, for which he ordered a lock box for Plaintiff. *Id.* On August 8, 2018, Plaintiff met with Dr. Allen for a fifth time because the situation with Ms. Williams had not improved. *Id.* at 6.

On September 12, 2018, Plaintiff "called the ORM [Office of Resolution Management] concerning the hostile work environment caused by" Ms. Williams. *Id.* Plaintiff then filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). *See id.* The next day, Dr. Allen confronted Plaintiff about the complaint, accusing her of harming the clinic and attempting to get Ms. Williams fired. *See id.* During this conversation, Plaintiff told Dr. Allen that she has a brain injury. *Id.* Based on Plaintiff's allegations, this appears to be the first time Plaintiff disclosed her disability to Dr. Allen. On September 17, 2018, Plaintiff participated in an unsuccessful EEOC mediation. *Id.*

On September 20, 2018, Plaintiff wrote "a letter of concern and requested upper management outside of clinic [sic] to conduct an investigation of hostile work environment caused by" Ms. Williams. *Id.* (emphasis omitted). The next day, Dr. Allen began "coming into [Plaintiff's] exam room taking over [Plaintiff's] eye exams . . . [and] making remarks to [Plaintiff] to hurry up," which caused Plaintiff to become confused and make mistakes. *Id.* (emphasis omitted). Despite Plaintiff's request that an investigation be conducted by management outside the clinic, she found out on October 10, 2018, that Dr. Allen had been assigned the task. *See id.* at 6-7. Dr. Allen requested that Plaintiff "sign a notice of fact finding document," which she did. *Id.* On October 18, 2018, Dr. Allen completed the investigation "and stated [that] workplace harassment could not be substantiated." *Id.* at 7.

On May 9, 2019, the Office of Medical Inspector ("OMI") requested that Plaintiff speak with them. *Id.* at 9. Plaintiff then signed a whistleblower agreement. *Id.*

**3.    Promotion**

Meanwhile, in September 2018, the clinic was "converted to Full Ophthalmology status." *Id.* at 6. Although Ms. Williams was converted to Ophthalmology status, Plaintiff was not converted, and she was instead required to perform ophthalmology duties without the accompanying promotion and pay raise. *Id.* During Plaintiff's self-evaluation, on November 6, 2018, Dr. Allen stated that she "may never get a bonus due to the fact that [she] is forgetful and he has to remind [her] to do things." *Id.* at 7 (emphasis omitted). In January 2019, Plaintiff asked Dr. Allen when she would be converted to Ophthalmology status, and he responded that he did not know and directed her to reach out to her chain of command. *Id.* On May 22, 2019, Plaintiff "emailed [her] AO[6] Mary Ellen Winkler asking about being converted to Ophthalmology." *Id.* at 9.

Two months later, on July 25, 2019, a human resources ("HR") specialist informed Plaintiff that she was "receiving a GS8 [General Schedule 8] promotion into Ophthalmology clinic with a two year time limit to receive [her] COA [Certified Ophthalmic Assistant] certification." *Id.* A few days later, Plaintiff received notification "of being selected for the GS8 Ophthalmology Tech position" from the Office of Personnel Management. *Id.* On August 7, 2019, however, HR specialist Rene Deedee ("Deedee") informed Plaintiff that her promotion was being rescinded. *Id.* Mr. Deedee requested that Plaintiff sign documents through email confirming the rescission, which Plaintiff did. *Id.*

---

[6] Neither Plaintiff nor Defendant define the acronym "AO" in their filings, although this may stand for "Administrative Officer."

Two days later, Plaintiff asked Dr. Allen if he could help her regain her promotion, but he said there was nothing he could do. *Id.* at 10.

### 4. Accommodation Requests

Plaintiff requested accommodations due to her disability several times. On November 23, 2018, Plaintiff requested accommodations from HR and Dr. Allen. *Id.* at 7. On November 30, 2018, Dr. Allen stated that the extra time Plaintiff was requesting "was something that could not be done" and that she could "accommodate [her]self out of a job." *Id.* Although Dr. Allen stated that Plaintiff's accommodation requests were "not valid" because he could not accommodate Plaintiff for extra time, he did state that he would stop coming into Plaintiff's exam room and taking over her exams. *Id.* On January 3, 2019, Plaintiff retracted her accommodation request "out of fear of losing [her] job" and after Dr. Allen confirmed that he would no longer push her to go faster or make comments about her forgetfulness and mistakes. *Id.*

In April 2019, Plaintiff asked Dr. Allen if she could sit in the front office where it was quieter and less distracting. *Id.* at 8. Dr. Allen denied this request, stating that he wants his tech "to sit in the room across from [him] in case [he] need[s] them." *Id.*

On October 25, 2019, Plaintiff "sent an email to [her] chain of command stating that [she] need[ed] accommodation and [she] would like to be re-assigned to different duties." *Id.* at 10. Three days later, Plaintiff "re-submitted for Reasonable Accommodation," asking "to be re-assigned due to the stress of being harassed over [her] cognitive disability by Dr. Allen." *Id.* Plaintiff stated that she no longer wanted to work with Dr. Allen. *Id.* On November 1, 2019, Plaintiff sent an email to Dr. Allen directly, asking to

be placed in another doctor's clinic until her reasonable accommodation reassignment could take place. *Id.* This request was denied. *Id.*

On November 12, 2019, Plaintiff participated in an interactive meeting with her union representative, HR specialist Tara Lisica ("Lisica"), and Dr. Allen. *Id.* During that meeting, Dr. Allen denied Plaintiff's request for accommodation. *Id.* He stated that placement of Plaintiff in another doctor's clinic or a reassignment to only diagnostic testing would "disrupt the morale of [the] clinic." *Id.* (emphasis omitted). He also denied Plaintiff's request for more time to work up patients, stating that Plaintiff was "a risk for his Ophthalmology clinic." *Id.* (emphasis omitted). Dr. Allen told Ms. Lisica "to take it to the next level." *Id.* Despite this denial, Dr. Allen met with Plaintiff the next day in another doctor's office and repeatedly asked Plaintiff what accommodations she needed. *Id.* at 11.

### 5.    Plaintiff Takes Leave

On November 23, 2019, Plaintiff suffered a seizure. *Id.* On December 3, 2019, Plaintiff took leave under the Family Medical Leave Act. *Id.* Plaintiff was then approved for social security disability insurance payments. *Id.*

## B.    Procedural Background

On January 3, 2020, Plaintiff filed an EEOC complaint[7] alleging that the VA discriminated against her based on sex, disability, age, and in retaliation for protected activity. *Compl. Ex. 2* [#1-2] at 1-2. Plaintiff alleged that this occurred: (1) when Plaintiff was subjected to harassment from August 2017 onward; (2) when Plaintiff's July 2019

---

[7] This EEOC complaint is distinct from the EEOC complaint Plaintiff filed on September 12, 2018. *Compl.* [#1] at 6. Plaintiff made the September 12, 2018 complaint after calling the ORM regarding the hostile work environment allegedly caused by Ms. Williams. *Id.* Plaintiff provides no further information on the outcome, beyond her participation in an unsuccessful EEOC mediation. *Id.*

promotion was rescinded in August 2019; and (3) when, on November 12, 2019, Plaintiff's supervisor denied her reasonable accommodation request made since 2018. *Id.* at 2.

After an investigation, the EEOC provided Plaintiff with a report of factual findings and notice of her right to request a hearing before an EEOC Administrative Judge ("AJ"). *Id.* Although Plaintiff requested a hearing, the AJ issued a decision without a hearing on November 22, 2021. *Id.* The AJ found that Plaintiff "failed to prove that the [VA] subjected her to discrimination as alleged." *Id.* Plaintiff appealed this decision on December 24, 2021. *Id.* at 1. The EEOC affirmed the AJ's final order on May 10, 2023, finding that Plaintiff did not "establish[] the presence of a material fact or that discrimination occurred." *Id.* at 7, 9. On November 6, 2023, the EEOC denied Plaintiff's request for reconsideration. *Compl. Ex. 3* [#1-3] at 2-3. After this denial, the EEOC explained that Plaintiff had "no further right of administrative appeal on the decision of the Commission on this request." *Id.* at 2.

On January 25, 2024, Plaintiff filed her Complaint [#1] using the Court's Employment Discrimination Complaint form. *See Compl.* [#1] at 1. Plaintiff seeks: "Lost wages, Career Rehabilitation, Health Rehabilitation . . . Lost Benefits, Lost 401 K[,] Front Pay, Future Health Insurance[,] Future Mental Health Care[,] Economic and Non-Economic damages[, and] All Attorney fee's [sic] and costs." *Id.* at 13.

## II. Legal Standard

Rule 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A

complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"; likewise, a complaint fails to "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

At the outset, the Court addresses which claims Plaintiff has alleged in her Complaint [#1]. In the Motion [#23], Defendant construes Plaintiff's Complaint [#1] as alleging five distinct claims under the Rehabilitation Act: (1) Claim 1, hostile work environment based on disability discrimination; (2) Claim 2, hostile work environment based on retaliation; (3) Claim 3: disability discrimination based on revocation of promotion; (4) Claim 4, retaliation based on revocation of promotion; and (5) Claim 5, failure to accommodate. *See Motion* [#23] at 1; *Reply* [#38] at 1-2.

Through counsel, Plaintiff notes in her Response [#34] that she identified a "Claim One" in the Complaint [#1] for "disability discrimination in violation of the Rehabilitation Act," stating that the underlying conduct concerned: (1) different terms and conditions of employment, (2) failure to promote, (3) failure to accommodate disability, (4) retaliation, and (5) violation of privacy.[8] *Response* [#34] at 1. Plaintiff also states that "[t]he Complaint asserts only a 'Claim One' (Complaint, pg. 3)[.]" *Id.* at 1 n.1. The Court presumes this is an oversight, given that the Complaint [#1] later specifically refers to "Claim Two – Retaliation" under the Rehabilitation Act. *Compl.* [#1] at 12.

Given this dissonance in the briefs, the Court must decide which claims Plaintiff has alleged in her Complaint [#1]. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the [pro se plaintiff's] pleadings to state a valid claim . . . it should do so[.]"); *but see Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) ("[The Court] will not . . . construct a legal theory on a [pro se] plaintiff's behalf."). Based on its review of the Complaint [#1], and taking into account the parties' statements and Plaintiff's pro se status when she filed the Complaint [#1], the Court finds that Plaintiff's claims, all brought under the Rehabilitation Act, are as follows: (1) disability discrimination, based on (a) the September 2018 failure to promote, (b) different terms and conditions of employment, and (c) the August 7, 2019 revocation of Plaintiff's promotion; (2) retaliation, based on (a) the September 2018 failure to promote, (b) different terms and conditions of employment, and (c) the August 7, 2019 revocation of Plaintiff's promotion; (3) failure to accommodate a disability, based on (a) the November 2018 request, (b) the April 2019 request, and (c) the October 2019 request; (4) hostile

---

[8] After the Response [#34] was filed, Plaintiff voluntarily dismissed her privacy claim. *Notice* [#46].

work environment based on Plaintiff's disability; and (5) hostile work environment based on retaliation.

Defendant seeks dismissal for failure to state a claim of Plaintiff's disability discrimination and retaliation claims based on the August 7, 2019 revocation of Plaintiff's promotion, and Plaintiff's failure to accommodate claim based on her October 2019 request.[9] *See Motion* [#23] at 1.

## A.   Exhaustion

The Court first addresses Defendant's argument that the September 2018 failure to promote and the November 2018 and April 2019 failures to accommodate are not actionable because they were not timely exhausted, as required by the Rehabilitation Act. *See, e.g.*, *Motion* [#23] at 4; *Reply* [#38] at 6-8, 9-10.

Federal employees such as Plaintiff must exhaust their administrative remedies by complying with specific administrative complaint procedures before suing for discrimination or retaliation under Title VII or the Rehabilitation Act. *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020); *see* 29 C.F.R. § 1614.407. The exhaustion requirement serves "two principal purposes: '1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim[.]'" *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (citation omitted). "To advance these purposes . . . [a] plaintiff's claim in court 'is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'" *Id.* (citation omitted). Discrete acts such as a

---

[9] In the present Motion [#23], Defendant explicitly does not seek dismissal of Plaintiff's two hostile work environment claims at this time. *See* [#23] at 1. Defendant also does not argue that Plaintiff's disability discrimination and retaliation claims, to the extent that they are based on different terms and conditions of employment, fail to state a claim. *See generally Motion* [#23]; *Reply* [#38].

failure to promote, as opposed to the broad existence of a hostile work environment, for example, constitute separate actionable unlawful employment practices, and each must be administratively exhausted. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002).

Further, a federal employee can only administratively exhaust discrete acts through a charge filed with the EEOC within the timely filing period. *See Hickey*, 969 F.3d at 1118*; see also* 29 C.F.R. § 1614.105(a-d) (containing pre-complaint timing requirements); § 1614.106 (containing the complaint timing requirement). For instance, before a federal employee can sue her employer for discrimination or retaliation, she must initiate contact with an Equal Opportunity counselor at her agency within 45 days of the discriminatory action. *See Hickey*, 969 F.3d at 1118; *see also Green v. Brennan*, 578 U.S. 547, 549-50 (2016) (discussing this requirement in the Title VII context). The EEOC's consideration of an act of discrimination which is contained in a plaintiff's complaint is not dispositive of whether the complaint was timely filed regarding that discriminatory act. *See Underwood v. Durango Coca-Cola Bottling Co.*, No. 20-cv-0997-WJM-SKC, 2021 WL 964051, at *3 (D. Colo. Mar. 15, 2021) ("Courts do not typically defer to the EEOC's interpretation of the clear requirement of a time limit on filing a charge, which is unambiguous and easily verifiable.").

The Court may grant a motion to dismiss under Rule 12(b)(6) based on the affirmative defense of lack of exhaustion if the grounds for the defense are apparent on the face of the complaint. *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019).

### 1.    The September 2018 Failure to Promote

First, Defendant argues that the initial failure to promote in September 2018, where Plaintiff was not promoted to "Full Ophthalmology status" alongside Ms. Williams, cannot form the basis of Plaintiff's discrimination or retaliation claims because it is a discrete act that was not timely exhausted. *See Reply* [#38] at 6-8.

Plaintiff attached both the EEOC decision on appeal, *see Compl. Ex. 2* [#1-2], and the EEOC denial of her request for reconsideration, *see Compl. Ex. 3* [#1-3], to the Complaint [#1], but she did not attach the underlying complaint of discrimination. Nevertheless, the EEOC's description of the record demonstrates that Plaintiff likely raised the issue of the September 2018 failure to promote, at least to some extent, during the proceedings. *See Compl. Ex. 2* [#1-2] at 3-4 ("The . . . technicians were all promoted to GS 8 with or without COA certification. . . . I asked HR and my chain of command to help me."). However, even assuming that the September 2018 failure to promote was part of Plaintiff's complaint of discrimination, the Court finds that it was not timely exhausted for the reasons explained below. *See Morgan*, 536 U.S. at 114-15 (identifying "failure to promote" as a discrete act and holding that all discrete acts occurring outside the timely filing deadline "are untimely filed and no longer actionable").

Plaintiff filed her complaint of discrimination with the EEOC on January 3, 2020. *See Compl. Ex. 2* [#1-2] at 1. Defendant asserts that Plaintiff, as a federal employee, had 90 days, at a maximum, under the Rehabilitation Act to timely file her claims based on the September 2018 failure to promote. *See Reply* [#38] at 8. Although the Court finds this statement of law to be incorrect, these claims are nonetheless still untimely. Under the Rehabilitation Act, a federal employee must initiate informal EEO counseling within

45 days of the discrete act. *See* 29 C.F.R. § 1614.105(a)(1). Within 30 days of the initial contact—or within 90 days if the counseling period is extended for an additional period of no more than 60 days—if the complaint is not resolved the employee receives notice of the right to file a complaint of discrimination with the EEOC. *See* 29 C.F.R. § 1614.105(d)-(f). The employee then has 15 days from the date of receipt of the notice to file a discrimination complaint with the EEOC. *See* 29 C.F.R. § 1614.106(b). Thus, under the Rehabilitation Act, a federal employee has, at most, 150 days to file a discrimination complaint. *See Lee v. Saul*, Nos. 19 Civ. 6553 (PGG) (SN), 20 Civ. 2956 (PGG) (SN), 2022 WL 873511, at *6 (S.D.N.Y. Mar. 23, 2022) ("[T]he earliest conduct that could properly be cited in [the plaintiff's] EEO complaint would have occurred 150 days before the filing of the EEO complaint (45 + 90 + 15)."). Here, approximately 460 days elapsed between the September 2018 failure to promote and Plaintiff's filing of a discrimination complaint with the EEOC on January 3, 2020. Because her EEOC discrimination complaint was filed outside the statutory timely filing period, this alleged failure to promote is no longer actionable. Although Plaintiff attempts to link this prior failure to promote to the later revocation of her promotion, "related discrete acts" cannot be combined "into a single unlawful practice for the purposes of timely filing." *Morgan*, 536 U.S. at 111. Thus, Plaintiff has failed to exhaust her claims for discrimination and retaliation under the Rehabilitation Act based on the September 2018 failure to promote.

Accordingly, the Motion [#23] is **granted** to the extent that Defendant seeks dismissal of Plaintiff's discrimination and retaliation claims based on the September 2018 failure to promote. The Court finds that **dismissal with prejudice** is appropriate because Plaintiff failed to exhaust her administrative remedies, and the time to do so has long

since passed. Therefore, even if this case were dismissed without prejudice, it would have the effect of a dismissal with prejudice. *See, e.g.*, *AdvantEdge Bus. Group v. Thomas E. Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1236 (10th Cir. 2009) (recognizing that "a dismissal without prejudice can have the practical effect of a dismissal with prejudice" if a claim is time-barred); *see also Lawrence v. Bonaventure of Castle Rock*, No. 22-cv-01143-WJM-KLM, 2022 WL 17960556, at *8 (D. Colo. Dec. 27, 2022) ("Here, even if Plaintiff could cure the deficiencies in the . . . claim, the Court has also recommended that the claim be dismissed for failure to exhaust administrative remedies. Because the failure to exhaust bars the claims . . . it is recommended that the Complaint [ ] be dismissed with prejudice."), *report and recommendation adopted*, No. 22-cv-1143-WJM-KAS, 2023 WL 6976050 (D. Colo. Oct. 23, 2023).

### 2.    The Accommodation Denials Prior to October 2019

Next, Defendant appears to concede that Plaintiff's October 2019 failure to accommodate claim is timely but argues that claims based on the two other accommodation requests are not: (1) the November 23, 2018 request followed by the November 30, 2018 denial, a request which Plaintiff ultimately retracted on January 3, 2019; and (2) the April 2019 request which was immediately denied by Dr. Allen. *See Reply* [#38] at 8-10; *see also Response* [#34] at 4-6; *Compl.* [#1] at 7-8.

The Tenth Circuit has yet to decide whether a failure to accommodate is a discrete act of discrimination that must be timely exhausted. *See, e.g.*, *Sanchez v. City & County of Denver*, No. 1:19-cv-01307-DDD-SKC, 2019 WL 5695949, at *5 (D. Colo. Nov. 4, 2019). However, at least two other courts within the Tenth Circuit have found that it is. *See id.*; *Becerra v. EarthLink, Inc.*, 421 F. Supp. 2d 1335, 1343 (D. Kan. 2006) (citing

*Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d. Cir. 2003)). In *Elmenayer*, the Second Circuit explained that, "[a]lthough the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, denials that [*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002),] offered as examples of a discrete act." *Elmenayer*, 318 F.3d at 135. The Court finds that, as a matter of law, a failure to accommodate is a discrete act of discrimination that must be timely exhausted.

Plaintiff filed her complaint of discrimination with the EEOC on January 3, 2020. *See Compl. Ex. 2* [#1-2] at 1. As discussed above, for a claim based on a discrete act to have been timely exhausted by this EEOC complaint, the discrete act could not have occurred before August 6, 2019, at most— i.e., 150 days before the filing of her complaint. Because both the November 2018 and April 2019 accommodation requests and denials occurred before this date, the Court finds that they were not timely exhausted.

Accordingly, the Motion [#23] is **granted** to the extent that Plaintiff's claims for failure to accommodate November 2018 and April 2019 accommodation requests are **dismissed with prejudice**. *See Lawrence*, 2022 WL 17960556, at *8.

## B.   Revocation of Promotion

On August 7, 2019, thirteen days after Plaintiff learned that she was being promoted to "GS8 Ophthalmology Tech," Mr. Deedee notified Plaintiff that her promotion was being rescinded. *Compl.* [#1] at 9. Defendant argues that Plaintiff has not adequately alleged that this decision was unlawfully motivated by her disability or retaliation. *Motion* [#23] at 6.

### 1.    Discrimination

The Rehabilitation Act prohibits federal agencies, like the VA, from discriminating against employees based on a qualified disability. *See Ford v. Brennan*, No. 21-4086, 2023 WL 5606233, at *4 (10th Cir. Aug. 30, 2023). To state a discrimination claim under the Rehabilitation Act, a plaintiff must allege that "(1) [she] is a handicapped person within the meaning of the Act; (2) she is otherwise qualified for the job; and (3) she was discriminated against because of the handicap." *Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir. 1997). Defendant argues that Plaintiff has failed to adequately allege causation, the third element. *See Motion* [#23] at 7.

In the Motion [#23], Defendant analyzes Plaintiff's claim under the more lenient *but-for* causation standard for Americans with Disabilities Act claims. *See Motion* [#23] at 7. However, the causation element in a Rehabilitation Act claim is interpreted differently than in an ADA claim due to differing statutory language. *See Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312-13 (10th Cir. 2021) ("[T]he ADA merely requires the plaintiff's disability be a but-for-cause (i.e., 'by reason of') of the discrimination, rather than—as the Rehabilitation Act requires—its sole cause (i.e., 'solely by reason of')."); *see also Staton v. DeJoy*, No. 1:23-cv-03223-SBP, 2025 WL 42821, at *5 (D. Colo. Jan. 7, 2025) (recognizing "sole cause" standard for Rehabilitation Act claim involving federal employee plaintiff); *Williams v. Colo. Dep't of Corr.*, No. 21-cv-02595-NYW-NRN, 2024 WL 3069274, at *5 (D. Colo. June 20, 2024) (distinguishing Rehabilitation Act's "sole cause" standard from the ADA's "lesser but-for causation standard"). Thus, the Court utilizes the more demanding "sole cause" standard in evaluating Plaintiff's claim.

The Complaint [#1] contains the following allegations regarding the August 7, 2019 rescission of Plaintiff's promotion: (1) Plaintiff was notified of a promotion by an HR Specialist; (2) ten days later she was notified by a different HR specialist that her promotion had been rescinded; and (3) she asked Dr. Allen to help her regain her promotion but he told her that there was nothing he could do. *See Compl.* [#1] at 9-10. Defendant argues that "Plaintiff does not allege who made the decision to rescind her promotion . . . that the decision-maker knew of her disability . . . [or] that the rescission was motivated, in any way, by her disability, much less that her disability was the but-for cause of the recission [sic]." *Motion* [#23] at 7. Under the appropriate sole cause standard, the Court finds that Plaintiff has not plausibly alleged that her disability was the sole cause of the August 7, 2019 rescission of her promotion.

Plaintiff asserts that Dr. Allen, her supervisor, "was well aware of and disdainful of Plaintiff's disability and accommodation needs[.]" *Response* [#34] at 3. Although Dr. Allen directed Plaintiff to reach out to her chain of command for help getting the promotion, he "was presumably part of that 'chain of command' whose input would be solicited or at least considered in any promotion decision." *Id.*; *see Compl.* [#1] at 7. Plaintiff concludes that "[i]t would be improbable to promote Plaintiff without consulting her direct supervisor[.]" *Response* [#34] at 3. If anything, however, this logic cuts against Plaintiff's disability being the sole cause of the August 7, 2019 rescission of her promotion. If the Court presumes that Dr. Allen was consulted about Plaintiff's promotion, the fact that she was promoted suggests that he approved—or at the very least did not veto it.[10] Plaintiff

---

[10] For the first time in her Response [#34], Plaintiff contends that a similarly situated coworker "without any perceived disability" was allowed a promotion, and this should bolster her discrimination claim. *See* [#34] at 3. However, Plaintiff does not allege sufficient facts in her Complaint [#1] to suggest that Ms. Williams was either similarly situated—whether she had the

"ha[s] not nudged [her] claim[] across the line from conceivable to plausible[.]" *See Twombly*, 550 U.S. at 570.

Accordingly, the Motion [#23] is **granted** to the extent that Plaintiff's disability discrimination claim based on the August 7, 2019 revocation of her promotion is **dismissed without prejudice**. *Cf. Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (holding that "dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile").

### 2.    Retaliation

"[T]he Rehabilitation Act prohibits not just discrimination on the basis of disability but retaliation against those who report disability discrimination." *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1165 (10th Cir. 2014). To state a retaliation claim premised on disability, Plaintiff must plead facts plausibly alleging "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Brown v. Austin*, 13 F.4th 1079, 1090 (10th Cir. 2021) (internal quotations and citations omitted)). Here, Defendant again challenges the causation element, arguing that Plaintiff has "not allege[d] any facts plausibly showing a causal connection between [Plaintiff's] protected conduct and the rescinded promotion, or any well-pleaded facts from which a retaliatory motive could be inferred." *Motion* [#23] at 8.

---

disputed certification or not—or whether she herself was disabled. *See Mobley*, 40 F.3d at 340 (testing "the sufficiency of the allegations within the four corners of the complaint" in a Rule 12(b)(6) motion).

Plaintiff argues that the rescission of her promotion was actionable retaliation in response to several events which she characterizes as "EEO-protected activity." *Response* [#34] at 4. She argues that "temporal proximity between an adverse action and EEO-protected activity is evidence of discriminatory and retaliatory pretext." *Id.* (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-40 (10th Cir. 2008)). While true, the two events "must be '*very closely* connected in time' if that is the only evidence relied on." *Mann v. XPO Logistics Freight, Inc.*, 819 F. App'x 585, 606 (10th Cir. 2020) (citation omitted; emphasis in original); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing legal authority holding that "a one and one-half month period between protected activity and adverse action may, by itself, establish causation," while "a three-month period, standing alone, is insufficient to establish causation").

Working backwards three months from the date Plaintiff's promotion was rescinded, August 7, 2019, there are two actions which Plaintiff characterizes as protected conduct: (1) on May 9, 2019, Plaintiff signed a whistleblower agreement with the OMI; and (2) in June 2019, Plaintiff participated in an Office of Inspector General ("OIG") interview. *See Response* [#34] at 4. Defendant argues that these activities are not protected conduct under the Rehabilitation Act. *See Reply* [#38] at 5. Even if the Court assumes that these activities are protected conduct, though, the facts as alleged present another problem: When did the decisionmakers become aware of this conduct? Plaintiff alleges that Dr. Allen knew about Plaintiff's June 2019 OIG interview when it occurred. *Compl.* [#1] at 9. Plaintiff further states that all the allegedly protected conduct occurred before her July 29, 2019 promotion. *See Response* [#34] at 4. Plaintiff has alleged no

facts to support an inference that this information became known in the short window between the July 29, 2019 promotion and the August 7, 2019 rescission.

Even reading the Complaint [#1] in a light most favorable to Plaintiff, it is implausible that the decisionmakers would promote Plaintiff and then rescind her promotion as retaliation for conduct they knew about all along. At the Rule 12(b)(6) stage, "[a] 'causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive[.]" *Davis v. BAE Sys. Tech. Sols. & Servs. Inc.*, 764 F. App'x 741, 744 (10th Cir. 2019) (citation omitted). Here, the intervening promotion, decided by decisionmakers who presumably already knew about Plaintiff's conduct, destroys any inference of retaliatory motive in the subsequent rescission of the promotion. *See, e.g.*, *Mann*, 819 F. App'x at 607 (finding no causal connection between an employee filing a discrimination complaint and that employee's suspension seventeen days later because the employer decided to suspend the employee before the complaint was filed); *Chavez v. New Mexico*, 397 F.3d 826, 838-39 (10th Cir. 2005) (finding no causal connection between a discrimination complaint and an adverse employment action where the plaintiff complained that, "although she received a promotion after filing her complaint, she has yet to obtain the promised increase in salary").

Accordingly, the Motion [#23] is **granted** to the extent that Plaintiff's claim for retaliation based on the August 7, 2019 revocation of her promotion is **dismissed without prejudice**. *See Brereton*, 434 F.3d at 1219.

## C.   Failure to Accommodate

"The Rehabilitation Act imposes a duty on federal employers to 'provide reasonable accommodations to disabled employees.'" *Sanchez v. U.S. Dep't of Energy*,

870 F.3d 1185, 1195 (10th Cir. 2017) (citation omitted). To state a claim premised on a failure to accommodate, Plaintiff must plead facts plausibly alleging that: "1) she was disabled, 2) she was otherwise qualified, 3) she requested a plausibly reasonable accommodation, and 4) [Defendant] refused to accommodate her disability." *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020) (discussing elements on an ADA failure to accommodate claim); *Crane*, 15 F.4th at 1312 ("We typically evaluate claims identically under the ADA and Rehabilitation Act."). Defendant argues that Plaintiff has not plausibly alleged that it denied her October 2019 accommodation request.[11] *See Motion* [#23] at 10-13; *Reply* [#38] at 8-9.

According to Defendant's reading of the Complaint [#1], Plaintiff's October 2019 request had not yet been denied when she suffered a seizure on November 23, 2019, and then took leave. *See Motion* [#23] at 10-12; *Reply* [#38] at 9. However, Plaintiff explicitly alleges in the Complaint [#1] that Dr. Allen directly denied her accommodation request at the November 12, 2019 meeting. *See Compl.* [#1] at 10 ("Dr. Allen denied my request for reasonable accommodations of being placed in Dr. Henry's clinic only or to do the diagnostic testing only, stating that 'it would disrupt the morale of the clinic[.]' Dr. Allen denied my reasonable accommodation request for 'more time' to work up [patients]."

---

[11] In a footnote, Defendant states that "Plaintiff's proposed allegations in this case do suggest that she was requesting not to have to perform essential functions of her position, however, given the fact-specific nature such an inquiry would require, Defendant seeks dismissal on the third element—whether Plaintiff requested a plausibly reasonable accommodation—at this stage." *Motion* [#23] at 12 n.7. However, Defendant makes no further argument in either the Motion [#23] or the Reply [#38] about the reasonableness of Plaintiff's proposed accommodation. Rather, Defendant's arguments focus on the fourth element alone, i.e., whether Defendant refused to accommodate her request. Thus, Defendant's statement here regarding the third element appears to be a drafting error. Regardless, because Defendant has not provided any specific argument on the third element, the Court declines to dismiss Plaintiff's failure to accommodate claim on this basis.

(emphasis omitted)). At most, there is a fact issue regarding when the accommodation request was denied. Thus, at this early stage in the proceedings, the Court finds that Plaintiff has plausibly alleged a claim for a failure to accommodate her disability based on her October 2019 request.

Accordingly, Defendant's Motion [#23] is **denied** to the extent that Defendant seeks dismissal of Plaintiff's October 2019 failure to accommodate claim.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#23] is **GRANTED in part** and **DENIED in part**. The Motion [#23] is **granted** to the extent that the following of Plaintiff's claims are **dismissed with prejudice**: (1) disability discrimination based on the September 2018 failure to promote; (2) retaliation based on the September 2018 failure to promote; and (3) failure to accommodate, as to (a) the November 2018 request and (b) the April 2019 request. The Motion [#23] is further **granted** to the extent that the following of Plaintiff's claims are **dismissed without prejudice**: (1) disability discrimination based on the August 7, 2019 revocation of Plaintiff's promotion; and (2) retaliation based on the August 7, 2019 revocation of Plaintiff's promotion. The Motion [#23] is otherwise **denied**.[12]

---

[12] The following claims, all brought under the Rehabilitation Act, remain in this lawsuit: (1) disability discrimination based on different terms and conditions of employment; (2) retaliation based on different terms and conditions of employment; (3) failure to accommodate disability as to Plaintiff's October 2019 request; (4) hostile work environment based on disability; and (5) hostile work environment based on retaliation.

Dated: March 14, 2025                              BY THE COURT:


Kathryn A. Starnella
United States Magistrate Judge